IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GEODYNAMICS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:17-CV-00371-RSP |
| | § | |
| DYNAENERGETICS US, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff moves to exclude the testimony of Dr. Vallerie DeLeon, one of Plaintiff's technical experts. Def.'s Mot. [Dkt. #117]. Defendant moves to strike DeLeon's Supplemental Report [Dkt. #147-3] and DeLeon's Declaration [Dkt. #147-2] as improper and untimely. Def.'s Mot. at 10–11. Defendant argues that DeLeon is not qualified to provide expert testimony on SEM testing. *Id*. at 12. Defendant argues that DeLeon's analysis is unreliable for several reasons, including the time deadlines that she was confined to and her reliance upon samples from John Hardesty's collection tests. *Id*. at 3–10.

**I. DeLeon's Supplemental Report will not be stricken because it is limited to rebutting criticisms from Dr. Lograsso's Rebuttal Report and because the *Sierra Club* factors suggest that it should not be stricken.**

    **A. Background**

DeLeon performed her initial analysis on samples from Hardesty's collection tests. DeLeon Dep. at 79:19–80:22 [Dkt. #117-4]. In conducting her initial analysis, DeLeon used charts such as the one shown below.[1]



DeLeon Rep. at Ex. C [Dkt. #93-2]. In analyzing the charts, DeLeon claims to have identified the presence of NiAl, the presence of which is critical to Plaintiff's infringement position. *Id*. at ¶ 22. Dr. Thomas Lograsso, who serves as a technical expert for Defendant, drafted a Rebuttal Report that criticized certain aspects of DeLeon's analysis. Lograsso Rebuttal Rep. [Dkt. #158-8]. Among other criticisms, Lograsso stated that DeLeon's "SEM

---

[1] These charts show the Two-Theta value on the x-axis and the Intensity level on the y-axis. Metal elements and intermetallic compounds have an established Two-Theta value. If the chart for a given sample shows a peak Intensity Level at a certain Two-Theta value, then this indicates whether an element or compound with that Two-Theta value is present within the sample.

data shows clearly that the peaks Dr. DeLeon found correspond to unreacted Ni and Al, and not the intermetallic compound NiAl." *Id.* at ¶ 111.

In DeLeon's Supplemental Report, DeLeon discusses a new XRD analysis of samples with pure nickel, pure aluminum, and mixtures of nickel and aluminum. Supp. Rep. at ¶¶ 13–15, Ex. A. Exhibit A of the Supplemental Report is DeLeon's lab report on this new XRD analysis. *Id.* at ¶ 13, Ex. A. DeLeon contends that her new XRD analysis was done to address "Dr. Lograsso's opinion that the peaks observed were those of Ni and Al." *Id.* at ¶ 13. DeLeon argues that based on these tests, she disagrees with Lograsso's opinion that the "broad peak reflection in the 44 to 45 degree 2-theta range only shows 'intense peaks for Ni and Al that are centered at the expected angular positions.'" *Id.* (quoting Lograsso Rep. at ¶ 48). DeLeon stated that the analysis for pure nickel and pure aluminum proves that the analysis "for DPEX, HaloFrac, CONNEX, and the Blends all show the presence of NiAl." *Id.* at ¶ 15. DeLeon stated that she could have requested pure samples of nickel and aluminum for testing, but she just did not see the need for it prior to receiving Lograsso's Rebuttal Report. DeLeon Dep. at 91:19–92:3.

Defendant argues that DeLeon's Supplemental Report was not timely filed and should be stricken. Def.'s Mot. at 10–11; Def.'s Reply at 1–3. Plaintiff argues that the Supplemental Report is timely filed under Fed. R. Civ. Pro. 26(a)(2)(D)(ii). Thus, the dispute centers around whether Rule 26(a)(2)(D)(ii) applies, and in resolving this issue, the primary question that must be answered is whether DeLeon's Supplemental Report may be properly characterized as "supplemental."

**B.    Applicable Law**

Rule 26(a)(2)(D)(ii) states that "[a]bsent a stipulation or a court order, the disclosures must be made: . . . (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure." *See also Hester v. CSX Transp., Inc.*, 61 F.3d 382, 388 n.11 (5th Cir. 1995) ("[I]f an expert's opinion is to be introduced merely to rebut the opposing party's expert's opinion, parties have thirty days from the date of disclosure of that opinion to supplement their discovery responses.").

In an earlier case, this Court addressed a similar issue, and that case provides guidance on characterizing reports. *CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018). An initial report contradicts an expected portion of the opposing party's case. *Id.* (citing *Morgan v. Commercial Union Assurance Cos.*, 606 F.2d 554, 556 (5th Cir. 1979)). A rebuttal report "explains, repels, counteracts, or disproves evidence of the adverse party's initial report." *Id.* (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party.")). A "supplemental" report adds to a previously-served report without going beyond the opinions expressed in the report and without using information available prior to the deadline for service of the supplemented report. *Id.* (citing *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 569–71 (5th Cir. 1996) ("The purpose of rebuttal and supplementary disclosures is just that—to rebut and supplement.")).

Rule 37 sets the consequences of untimely or insufficient disclosure by a party: "[T]he party is not allowed to use that information or witness to supply evidence on a

motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When determining substantial justification or harm, courts considers (1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing any such prejudice by a continuance; and (4) the explanation, if any, for the party's failure to comply with the discovery order or rules. *See Sierra Club*, 73 F.3d at 572 (citing *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989)).

### C. Analysis

Defendant takes issue with paragraphs 13 through 15 and the Exhibits discussed within those paragraphs. Defendant argues that the new analysis could have been included in DeLeon's original report and that it is not proper rebuttal. Def.'s Reply at 1. Defendant points to DeLeon's statement that she could have requested pure samples of nickel and aluminum for testing but did not see the need for it prior to receiving Lograsso's Rebuttal Report. Def.'s Mot. at 13; DeLeon Dep. at 91:7–92:3.

The Court's docket control orders do not normally contemplate surrebuttal reports. However, the Court will deny Defendant's Motion on this point as the *Sierra Club* factors suggest that the admission of this new analysis was substantially justified. Even if these portions of the Supplemental Report are an "untimely" report, the *Sierra Club* factors suggest that this new analysis should not be stricken. Plaintiff has a sufficient justification since DeLeon did not see the need for an analysis of pure nickel and pure aluminum until Lograsso's criticisms were presented. This new analysis is important to Plaintiff in responding to Lograsso's criticisms to show that a shoulder was present in the charts. While

Defendant will suffer some prejudice by the admission of this Supplemental Report, this prejudice is limited because DeLeon confined her new analysis to responding to criticisms from Lograsso. Thus, the *Sierra Club* factors suggest that this new analysis was substantially justified, so the Court will DENY the Motion to Strike DeLeon's Supplemental Report in full.[2]

## II. DeLeon is sufficiently qualified in SEM testing and other forms of elemental analysis, and her analysis is sufficiently reliable to allow her to testify.

### A. Background

#### 1. *Related to Qualifications*

DeLeon has received a Ph.D. in analytical chemistry from the University of North Texas. DeLeon Rep. at ¶ 3 [Dkt. #93-2]. She states that she has "been operating XRD systems and interpreting analytical results since the beginning of my graduate studies. Much of my research was presented at local and national conferences." *Id*. She contends that she has "published several papers in the field of analytical chemistry." *Id*. at ¶ 7. She states that she has trained employees for Chevron, Dow-Corning, Pfizer in data analysis and that she has performed "hundreds, if not thousands, of phase identification analyses" using x-ray diffractometry ("XRD"). *Id*. at ¶ 6.

DeLeon stated that she does not frequently perform tests with a Scanning Electron Microscope ("SEM"). DeLeon Dep. at 14:23-15:10 [Dkt. #117-4]. DeLeon stated that she

---

[2] In its Reply Brief for this Motion, Defendant also argues that DeLeon's Declaration should be stricken. However, the Defendant argues over a few sentences from this Declaration. These statements appear relatively harmless to the Defendant, and the Court finds that the admission of these sentences would be substantially justified under the *Sierra Club* factors for the reasons stated above.

has personally conducted "a few" SEM experiments during her research in conjunction with other students and professors, but she has not performed SEM since the conclusion of her research in December 2012. *See* DeLeon Dep. at 14:17–22, 15:13–22. According to DeLeon, her lab, TexRay Laboratory Services, does not have SEM equipment. *Id.* at 13:11–13; 15:20–22. However, DeLeon states that she has "expert-level knowledge on most forms of elemental analysis, including SEM" and that she has studied the theory behind SEM, that she is familiar with the operation of SEM, and that she is knowledgeable about the limitations of SEM analysis. DeLeon Decl. at ¶ 15 [Dkt. #147-2].

   2. *Related to Reliability*

DeLeon was first contacted about the litigation on Thursday, May 31, 2018. DeLeon Dep. 55:25–57:8. She received five samples on Friday, June 1, 2018. DeLeon Rep., Ex. C at 2 [Dkt. #117-2]. She claims that she started collecting data on that Friday. DeLeon Dep. 62:23–63:1. She worked on these samples over the weekend, and she did not have the assistance of lab technicians. DeLeon Dep. 65:9–12. She received the remaining samples on Saturday, June 2, 2018. DeLeon Rep., Ex. C at 3 [Dkt. #117-2]. This analysis was the first analysis that DeLeon had conducted in connection with litigation. DeLeon Dep. 21:25–22:5. DeLeon's expert report was the first one that DeLeon had ever drafted for litigation. DeLeon Dep. 62:14–16. Deleon's Expert Report was signed and dated June 4, 2018. DeLeon Rep. 11 [Dkt. #117-2].

DeLeon asserts that she subjected each sample to an 8-hour XRD scan and that this was sufficient time to produce datasets. DeLeon Decl. at ¶ 3. She contends that it is rare for her to subject samples to scans for that length of time and that this was sufficient time

to produce reliable data. *Id.* at ¶ 3. DeLeon took 80 hours of total scan time to perform scans, but Dr. Lograsso contends that "[g]iven the number of samples (10), the standard recommendation would require 120 to 720 hours of total time to acquire data of sufficient quality." Lograsso Rebuttal Rep. at ¶ 53.

### B. Applicable Law

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b. the testimony is based on sufficient facts or data;
> c. the testimony is the product of reliable principles and methods;
> d. the expert has reliably applied the principles and methods to the facts of the case.

Interpreting this rule, the Fifth Circuit has stated that "[e]xpert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the case; and (3) the evidence is reliable." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir.1997); *see also Little v. Tech. Specialty Prod., LLC*, 940 F. Supp. 2d 460, 467 (E.D. Tex. 2013) (stating that the proponent has the burden of proving these elements by a preponderance of the evidence). A court "should refuse to allow an expert witness to testify if the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). However, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Experts are not required to be highly qualified in order to testify on a certain issue, and "[d]ifferences in expertise bear chiefly on the weight to be assigned to the expert testimony by the trier of fact, not its admissibility." *Huss*, 571 F.3d at 452. The focus of the Daubert inquiry "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. 579 at 595.

### C. Analysis

#### 1. Qualifications

The Court concludes that DeLeon is sufficiently qualified for SEM testing and other fields. While DeLeon has not performed tests with SEM since receiving her Ph.D., she has sufficient knowledge and education to testify as an expert for this form of testing. She received her Ph.D. in analytical chemistry and has had several papers published in the field. In the course of her studies, she conducted experiments with SEM testing, and she states that she has studied the theory behind SEM and is familiar with the operation of SEM. DeLeon has substantial experience with elemental analysis. She serves as an instructor in data analysis for Chevron, Dow-Corning, Pfizer. While DeLeon stated that Lograsso has more experience with SEM testing than she does, this statement goes to the "weight to be assigned to the expert testimony by the trier of fact" rather than the admissibility of DeLeon's testimony.

#### 2. Reliability

Defendant argues that DeLeon's analysis was unreliable because all of her analysis was performed on samples generated in Hardesty's collection tests. DYNA argues that

Hardesty's collection tests were unreliable. Because DeLeon's analysis was entirely based on the resulting products from the collection tests, DYNA argues that DeLeon's analysis is also unreliable. Def.'s Mot. at 3–4. However, the Court concluded that Hardesty's tests were sufficiently reliable under Fed. R. Evid. 702. Accordingly, the Court will not find DeLeon's testing and analysis to be unreliable on the grounds that she relied upon Hardesty's tests.

Defendant asserts that DeLeon was not provided with sufficient time to do a proper XRD and XRF analysis of the ten samples that were provided to her. Def.'s Mot. at 4–6. While DeLeon was operating under tight time requirements, the Court concludes that these concerns are insufficient to preclude DeLeon from serving as an expert. Defendant is free to cross-examine DeLeon on these issues at trial.

Defendant also asserts that DeLeon unreliably based her opinion on a single peak. The Court notes that this argument focuses on the conclusion generated by DeLeon, and the *Daubert* inquiry must focus solely on the expert's principles and methodology rather than the conclusions generated by the expert. *Daubert*, 509 U.S. 579 at 595. Plaintiff and DeLeon argues that a shoulder is present in the charts, and Defendant may cross examine DeLeon at trial on the issue.

## 3. CONCLUSION

For the foregoing reasons, this Motion to Exclude Dr. Vallerie DeLeon's Testimony is DENIED, and the additional Motion to Strike DeLeon's Supplemental Report is DENIED.

**SIGNED this 30th day of September, 2018.**

*Roy S. Payne*
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE