# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| GEODYNAMICS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:17-CV-00371-RSP |
| | § | |
| DYNAENERGETICS US, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant moves to exclude testimony of Dr. Raymundo Arroyave, one of Plaintiff's technical experts. Def.'s Mot. to Strike [Dkt. # 119]. First, Defendant complains that Arroyave relies on flawed and unreliable testimony of two other witnesses, John Hardesty and Dr. Vallerie DeLeon. *Id.* at 3–7. Second, Defendant contends Arroyave's opinion contradicts the Court's claim construction rulings. *Id.* at 7–8. Finally, Defendant moves to strike Arroyave's supplemental report as improper and untimely. *Id.* at 8–13.

## A.   Dr. Arroyave's Reliance on Other Experts' Testing

Defendant first complains about Arroyave's reliance on certain testing by two other experts, John Hardesty and Dr. Vallerie DeLeon. Hardesty designed and implemented a test procedure to gather samples for analysis. DeLeon then analyzed those samples using x-ray diffraction (XRD) and x-ray fluorescence (XRF). Defendant separately attacks Hardesty's and DeLeon's methodologies as unreliable, and therefore alleges Arroyave's analysis

should also be stricken as based on faulty underlying analysis. Def.'s Mot. [Dkt. # 119] at 3–7. Defendant also criticizes Arroyave's interpretation of XRD spectra as "littered with suspect conclusions" and "overlook[ing] inconsistencies" to arrive at his opinions. *Id.* at 6–7.

The Court rejects Defendant's challenge for two reasons. First, Arroyave's reliance on Hardesty's and DeLeon's work doesn't put his own methodology in question. As a technical expert on infringement, Arroyave's role in this litigation is to analyze inputs provided to him that relate to whether the claim limitations are met by the accused products. That Arroyave might rely on other experts' analyses as inputs to forming *his* opinion does not make his own analysis unreliable under *Daubert*. Regardless, if the Court grants Defendant's motion to exclude testimony of Hardesty or DeLeon, the Court will consider the impact on Arroyave's opinion, if any.

Second, Defendant's claim that Arroyave's actual interpretation of XRD spectra is "littered with suspect conclusions" and "overlooks inconsistencies" is not an attack Arroyave's principles and methodology, but on his conclusions. The Court, however, must focus on the former rather than the latter. *See Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, 290 F. App'x 727, 731 (5th Cir. 2008) (noting the court's focus "must be solely on principles and methodology, not on the conclusions they generate"). Defendant is free to attack Arroyave's conclusions and stress any overlooked inconsistencies on cross-examination.

## B. Whether Arroyave's Opinion Contradicts the Court's Claim Construction Order

Next, Defendant contends Arroyave's opinion "impermissibly relies on an interpretation of the '394 patent that conflicts with the Court's claims construction ruling." Def.'s Mot. [Dkt. # 119] at 8. Specifically, Defendant criticizes Arroyave's deposition testimony that *any* liner containing nickel and aluminum would likely produce NiAl. Defendant cites three deposition excerpts in support of its position:

> Q. And you can't, sitting here today, put any bounds on where that stops, -- at what proportions of nickel and aluminum you would no longer be -- form nickel aluminide?
>
> A. So I can tell you with certainty that if you have zero percent aluminum, right, you don't have a reaction, right?
>
> Q. Sure.
>
> A. And if you have zero percent nickel, you don't have a reaction, right. So I know those two things.

Arroyave Dep. [Dkt. # 119-2] at 133:10–20.

> Q. Would it be a fair representation of your opinion that you gave zero and a hundred percent, but, generally speaking, any combination of nickel and aluminum in a liner would be because of your opinion, that it's likely to form NiAl, that you're likely to form at least some of that compound.
>
> A. So I'm a scientist, and the first thing that I'm -- that I do when I'm thinking of a problem is trying to exclude what I'm absolutely sure about. And those are the only places I'm absolute sure that you don't have a reaction, right.

*Id.* at 135:17–136:3.

> [Q.] If a shaped charge designer put -- created a shaped charge

> liner that contained nickel and aluminum --
>
> A. Yes.
>
> Q. -- and it was outside the bounds of the phase diagram and they ran XRD and did not detect NiAl --
>
> A. Yes.
>
> Q. -- they still could not be certain that nickel-aluminum was not form?
>
> A. . . . yes, because of the fact that, again, it sounds like a copout, but, really, you know -- you know, if you are below the detection limit of the analytical technique they were using, it's extremely difficult to prove the absence of something. And, you know, it is the nature of science. It's way more -- way easier to find positive proof that something exists than positive proof that something doesn't exist.

*Id.* at 152:6–24.

To the extent the claim construction order "reject[ed] the argument that any combination of Ni and Al will satisfy" the "respective proportions" limitation, the cited deposition testimony does not conflict with that reasoning. Arroyave did not testify that any combination would satisfy the claim limitation. Instead, he testified that the only way for him to be sure NiAl does *not* form is to have either zero percent nickel or zero percent aluminum, which is a different proposition. Accordingly, the Court will deny this part of the motion.

## C. Dr. Arroyave's Supplemental Expert Report

Last, Defendant complains about Arroyave's Supplemental Expert Report, which Plaintiff served on July 17, 2018, two days before Arroyave's deposition. Arroyave Dep. [Dkt. # 119-2] at 152:25–153:5. The Supplemental Report is 7 pages long and appears

primarily directed to criticizing Dr. Lograsso's opinions and conclusions as exceeding what can be supported by SEM/EDS testing. *See* Arroyave Supp. Rep. [Dkt. # 119-6]. In that regard, the Supplemental Report is really a rebuttal report in that it responds to affirmative opinions proffered in Dr. Lograsso's June 22, 2018 Rebuttal Report.

Plaintiff did not move for leave to serve the report and provided a copy only shortly before Arroyave's deposition. *See generally* Arroyave Dep. [Dkt. # 119-2] at 133:10–20. Defendant contends Plaintiff provided no explanation or authority for the Supplement Report. Def.'s Mot. [Dkt. # 119] at 9–10. Defendant was therefore left with little time to prepare for Arroyave's deposition as to the content of the Supplemental Report, and has no ability for an expert to respond. *Id.* at 12. Plaintiff responds that Arroyave's opinions are strictly limited to the testing performed by Lograsso. Pl.'s Resp. [Dkt. # 143] at 12–14.

The Court's docket control orders do not normally contemplate surrebuttal reports. The Court, however, will deny Defendant's motion on this point because Arroyave's rebuttal is short and focused on affirmative testimony found in Lograsso's report. Given the late disclosure by Plaintiff—less than two days before Arroyave's deposition—Defendant may take a short telephonic deposition of Dr. Arroyave concerning his Supplemental Report prior to his testimony at trial.

**SIGNED this 30th day of September, 2018.**

                                                              _/s/ Roy S. Payne_
                                                              ROY S. PAYNE
                                                              UNITED STATES MAGISTRATE JUDGE